# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**ZACHARY MORRIS**

Plaintiff,

v.

**MEIER FARMS, INC.**

Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Zachary Morris, by and through his undersigned attorneys, Bachus & Schanker, L.L.C., and hereby submits his Civil Complaint and Jury Demand against Defendant Meier Farms, Inc. In support thereof, Plaintiff Morris alleges and avers as follows:

## **PARTIES**

1. Plaintiff Zachary Morris is and at all times pertinent hereto was a citizen of the State of Colorado, residing in Sterling, Colorado, with a residential address of 411 N. Washington Ave., Fleming, Colorado, 80728.

2. Upon information and belief, at all times relevant to this action, Defendant Meier Farms, Inc. (hereinafter "Defendant Meier") was and is a corporation formed under the laws of the State of Nebraska with a principal office street address of 1814 Newton Street, Sidney, Nebraska 89162 and a principal office mailing address is P.O. Box 545, Sidney, Nebraska 69162.

3. Upon information and belief, at all times relevant to this action, Defendant Meier was registered to do business in the State of Colorado and had a registered agent in the State of Colorado of: Carolyn K. Parsons, 116 Quaker Street, Golden, Colorado 80401.

## JURISDICTION AND VENUE

4. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 3 of this Complaint as if set forth herein *verbatim*.

5. This is a diversity jurisdiction case brought pursuant to 28 U.S.C. § 1332.

6. Plaintiff is a citizen and resident of the State of Colorado.

7. Upon information and belief, Defendant Meier was a citizen and/or resident of the State of Nebraska.

8. Upon information and belief, Plaintiff Morris's injuries, damages, and losses exceed $75,000.

9. Upon information and belief, Defendant Meier is a registered business organization in the State of Colorado.

10. Upon information and belief, Defendant Meier has purposefully established minimum contacts with the State of Colorado.

11. Upon information and belief, this Court has personal jurisdiction over Defendant Meier.

12. Plaintiff's injuries, damages, and losses occurred in Logan County, State of Colorado.

13. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2), as the District of Colorado is the judicial district in which a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred.

## CHOICE OF LAW

14. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 13 of this Complaint as if set forth herein *verbatim*.

15. Plaintiff's injuries occurred in the State of Colorado.

16. Defendant Meier's agent's and/or employee's – Scott Alan Harms' – conduct (which Plaintiff alleges Defendant Meier is vicariously liable for) which caused Plaintiff's injuries occurred in the State of Colorado; to wit:

    a. Scott Alan Harms was operating a push tractor rented by Defendant Meier in Logan County, State of Colorado on September 7, 2015; and
    b. Scott Alan Harms failed to maintain a proper lookout when operating the push tractor rented by Defendant Meier in Logan County, State of Colorado on September 7, 2015; and
    c. Scott Alan Harms operated the push tractor rented by Defendant Meier while under the influence of alcohol in Logan County, State of Colorado on September 7, 2015; and
    d. Scott Alan Harms operated the push tractor rented by Defendant Meier in a careless, negligent, and reckless manner in Logan County, State of Colorado on September 7, 2015; and
    e. Scott Alan Harms caused the push tractor rented by Defendant Meier to run over Plaintiff Morris in Logan County, State of Colorado on September 7, 2015.

17. Plaintiff is a citizen and resident of the State of Colorado.

18. Defendant Meier is a citizen and/or resident of the State of Nebraska.

19. The place where the relationship between the Parties is centered is in the State of Colorado; to wit, Scott Alan Harms – Defendant Meier's agent and/or employee – was operating a push tractor rented by Defendant Meier in Logan County, State of Colorado, when Mr. Harms carelessly, negligently, and recklessly ran over Plaintiff Morris with the push tractor.

20. Upon information and belief, under the "most significant relationship" choice-of-law rule adopted by the Supreme Court of Colorado, the substantive law of the State of Colorado applies.

## FACTUAL ALLEGATIONS

21. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 20 of this Complaint as if set forth herein *verbatim*.

22. Upon information and belief, on September 7, 2015, Dinklage owned and operated a feed yard located at 31838 County Road 385, Iliff, Colorado 80736.

23. Upon information and belief, prior to September 7, 2015, Dinklage contracted with various companies to cut corn silage, truck the corn silage to silage pits on the Dinklage property, and unload the corn silage from the trucks into the silage pits.

24. Upon information and belief, there were push tractors in the silage pits which were used for packing and pushing the corn silage around in the silage pit to make room for more incoming corn silage.

25. Upon information and belief, Defendant Meier rented the push tractors to utilize at the corn silage pit where the September 7, 2015 incident occurred.

26. Upon information and belief, prior to September 7, 2015, Dinklage contracted with Defendant Meier to provide and operate the push tractors in the silage pit.

27. Upon information and belief, the push tractors in the Dinklage silage pit(s) rented, provided, and operated by Defendant Meier's agent(s) and/or employ(ees) were John Deere 95 60R models.

28. Upon information and belief, the push tractors had dual tires, dark black tint on the windows, a metal dozer blade on the front, and weights on the wheels for packing the corn silage.

29. Upon information and belief, each push tractor weighed approximately 68,000 pounds, not including the front dozer blade or wheel weights.

30. Upon information and belief, on September 7, 2015, Scott Alan Harms was an agent or employee of Defendant Meier and was an operator of one of the push tractors in the silage pit at the Dinklage feed yard.

31. Upon information and belief, on September 7, 2015, Scott Alan Harms was acting within the course and scope of his agency and/or employment with Defendant Meier.

32. Upon information and belief, on September 7, 2015, Scott Alan Harms was operating one of the push tractors in the silage pit at the Dinklage feed yard.

33. Upon information and belief, prior to September 7, 2015, Dinklage contracted with S and W Hay Service (hereinafter "S and W") for S and W to cut the corn silage and haul it to the silage pit(s) at the Dinklage feed yard.

34. Upon information and belief, prior to September 7, 2015, S and W subcontracted with Lewis Transport to cut corn silage and haul it to the silage pit(s) at the Dinklage feed yard.

35. On September 7, 2015 at approximately 12:30 p.m., Plaintiff Morris was a truck driver for Lewis Transport.

36. On September 7, 2015 at approximately 12:30 p.m., Plaintiff Morris was driving a truck for Lewis Transport, hauling a load of corn silage to a silage pit at the Dinklage feed yard.

37. On the aforementioned date, time, and place, Plaintiff Morris, hauling the load of corn silage, drove the truck he was operating into the silage pit at the Dinklage feed yard and backed up towards a pile of silage.

38. At that time, Plaintiff Morris observed the push tractor operated by Scott Alan Harms stopped next to the pile of silage.

39. Based on the nature and appearance of the pile of silage in the silage pit, Plaintiff Morris was unsure where to unload the corn silage he was hauling.

40. Upon information and belief, in instances where a truck driver is unsure of the proper place to unload the corn silage, truck drivers such as Plaintiff Morris are, by necessity, forced to exit their trucks to ask the operator of the push tractor where to unload the corn silage.

41. As Plaintiff Morris was unsure where to unload the corn silage, he exited the truck to inquire of the operator of the push tractor (in this instance, Scott Alan Harms) as to where he should unload the corn silage.

42. As the push tractor had remained stopped while Plaintiff was entering the silage pit and parking the truck in front of the pile of silage, Plaintiff felt safe in approaching the push tractor to inquire of the operator where to unload the corn silage he was hauling.

43. Plaintiff walked to the push tractor operated by Scott Alan Harms in order to ascertain where Plaintiff should unload the corn in his truck.

44. The push tractor remained stationary as Plaintiff approached it.

45. There was nothing between the push tractor and Plaintiff's truck or between the push tractor and Plaintiff which would have obstructed the operator's ability to see Plaintiff out of his truck and walking towards the push tractor.

46. Upon information and belief, Plaintiff was plainly visible to Scott Alan Harms if Scott Alan Harms had been maintaining a reasonable and proper lookout.

47. Plaintiff attempted to look into the cab of the push tractor to make visual contact with the operator (Scott Alan Harms) but could not see inside of the cab because of the dark black window tint.

48. If the windows of the push tractor had not been tinted dark black Plaintiff would have been able to see inside the cab to see what the operator – Scott Alan Harms – was doing as Plaintiff approached the push tractor.

49. Plaintiff paused as he approached the push tractor to make sure that the push tractor would not begin moving.

50. Plaintiff planned on stepping on the push tractor steps and then talking to the operator (Scott Alan Harms) to ascertain where to unload the corn silage on his truck.

51. Plaintiff then proceeded to walk between the front and rear axles near the steps of the left side of the push tractor.

52. Plaintiff then reached his arm up to grab a handrail when, suddenly and without warning, he heard the push tractor throttle up and the clutch drop.

53. At that point in time, the push tractor began moving forward quickly at what sounded like full throttle.

54. Plaintiff was unable to jump out of the way or onto the push tractor steps in time to avoid being run over by the push tractor tires.

55. In an attempt to protect his head, Plaintiff attempted to dive into the space between the dual tires on the rear axle of the push tractor.

56. At that point, the push tractor tires on rear axle ran over the Plaintiff (hereinafter "the incident").

57. Plaintiff felt the push tractor tires run over him during the incident.

58. Plaintiff heard his jaw and cheekbone break as the push tractor tires ran over him during the incident.

59. After the push tractor tires ran over him, Plaintiff, terrified he would be paralyzed, got up and attempted to walk to his truck but then immediately fell to the ground.

60. While Plaintiff was lying on the ground after being run over, Plaintiff heard Scott Alan Harms saying "I'm so sorry, I'm so sorry."

61. Shortly thereafter, paramedics arrived and put Plaintiff on a backboard and then ultimately loaded Plaintiff onto a helicopter which flew him to Northern Colorado Medical Center in Greeley, Colorado.

62. While at the Northern Colorado Medical Center in Greeley, Colorado, doctors had to remove Plaintiff's spleen.

63. Thereafter, Plaintiff was transported to Denver Health Medical Center.

64. As a result of being run over by the push tractor operated by Scott Alan Harms, Plaintiff suffered a broken cheek, a broken jaw, multiple skull fractures, multiple broken ribs in his front and back, multiple back fractures, a fractured pelvis, and collapsed lungs.

65. At the time of the incident, Scott Alan Harms failed to maintain a proper lookout while operating the push tractor.

66. Upon information and belief, according to one Jim Loos – a Dinklage supervisor who was at the scene of the incident, Scott Alan Harms was looking in another direction when he increased the throttle, dropped the clutch, and started moving the tractor forward.

67. At the time of the incident, Scott Alan Harms failed to operate the push tractor in a careful, safe, reasonable, and prudent manner.

68. Upon information and belief, at the time of the incident, Scott Alan Harms was operating the push tractor while under the influence of alcohol.

69. Upon information and belief, Scott Alan Harms' daughter – Nicole Harms – came to the hospital where Plaintiff Morris was at after the incident and told Plaintiff Morris' aunt that she wanted to take the first step to make things right and that her father – Scott Alan Harms – should not have been drinking.

70. On or about the aforementioned date, time, and place, Scott Alan Harms carelessly, negligently, and recklessly failed to exercise due and reasonable care, failed to maintain a proper lookout, failed to ensure that no person – like Plaintiff – was in the path of the tractor prior to throttling up and dropping the clutch, and failed to avoid Plaintiff Morris thereby causing the incident wherein Plaintiff Morris was run over by the push tractor.

71. On or about the aforementioned date, time, and place, Scott Alan Harms was operating the push tractor in a careless, negligent, and reckless manner without due regard for the safety of others, such as Plaintiff Morris.

72. On or about the aforementioned date, time, and place, Scott Alan Harms' careless, negligent, and reckless conduct was a direct and proximate cause of the aforementioned incident wherein Plaintiff Morris was run over by the push tractor.

73. On or about the aforementioned date, time, and place, Scott Alan Harms' careless, negligent, and reckless conduct was a direct and proximate cause of Plaintiff's injuries, damages, and losses.

74. As a direct and proximate result of the incident caused by the careless, negligent, and reckless conduct of Scott Alan Harms on or about the aforementioned date, time, and place, Plaintiff Morris suffered catastrophic, life-threatening injuries.

75. As a direct and proximate result of the incident caused by the careless, negligent, and reckless conduct of Scott Alan Harms on or about the aforementioned date, time, and place, Plaintiff Morris suffered economic and non-economic injuries, losses, and damages.

76. Plaintiff Morris was not comparatively negligent in causing the aforementioned incident or in causing his injuries, damages, and losses sustained on or about the aforementioned date, time, and place.

77. Scott Alan Harms had a duty to exercise reasonable care in the operation of the push tractor on or about the aforementioned date, time, and place.

78. On or about the aforementioned date, time, and place, Scott Alan Harms breached his duty to use reasonable care in the operation of the push tractor, without limitation, in the following ways:

    a. Failing to keep a proper lookout; and
    b. Operating the push tractor while under the influence of alcohol; and
    c. Failing to ensure that no person – like Plaintiff – was in the path of the tractor prior to throttling up and dropping the clutch; and
    d. Failing to avoid running over Plaintiff Morris; and
    e. Failing to stop the push tractor from running over Plaintiff Morris; and
    f. Causing the push tractor to run over Plaintiff Morris; and
    g. Failing to operate the push tractor in a careful, safe, reasonable, and prudent manner.

79. As a direct and proximate result of Scott Alan Harms' breaches of the aforementioned duties and the resulting incident wherein Plaintiff Morris was run over by the push tractor, Plaintiff Morris has incurred past and future economic expenses, losses, and damages including, but not limited to, past and future medical expenses, past and future loss of earnings, loss of earning capacity, loss of time, and other economic damages related to injuries sustained in the accident as described above.

80. As a direct and proximate result of Scott Alan Harms' breaches of the aforementioned duties and the resulting incident wherein Plaintiff Morris was run over by the push tractor, Plaintiff Morris has suffered in the past, and will continue to suffer in the future, non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional distress and impairment of quality of life.

81. As a direct and proximate result of Scott Alan Harms' breaches of the aforementioned duties and the resulting incident wherein Plaintiff Morris was run over by the push tractor, Plaintiff Morris has suffered permanent physical impairment.

82. As a direct and proximate result of Scott Alan Harms' breaches of the aforementioned duties and the resulting incident wherein Plaintiff Morris was run over by the push tractor, Plaintiff Morris has suffered permanent physical disfigurement.

83. Plaintiff Morris is entitled to interest on his compensatory damages at the legal rate pursuant to Colorado Revised Statute §13-21-101.

## CLAIM FOR RELIEF
### Vicarious Liability Of Defendant Meier Based On *Respondeat Superior* For The Negligence of Scott Alan Harms

84. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 83 of this Complaint as if set forth herein *verbatim*.

85. Scott Alan Harms – Defendant Meier's agent and/or employee – owed a duty to Plaintiff Morris to duty to exercise reasonable care in the operation of the push tractor on or about the aforementioned date, time, and place.

86. Scott Alan Harms – Defendant Meier's agent and/or employee – breached the above-mentioned duty of care to Plaintiff Morris without limitation, in the following ways:

    a. Failing to keep a proper lookout; and
    b. Operating the push tractor while under the influence of alcohol; and
    c. Failing to ensure that no person – like Plaintiff – was in the path of the tractor prior to throttling up and dropping the clutch; and
    d. Failing to avoid running over Plaintiff Morris; and
    e. Failing to stop the push tractor from running over Plaintiff Morris; and
    f. Causing the push tractor to run over Plaintiff Morris; and
    g. Failing to operate the push tractor in a careful, safe, reasonable, and prudent manner

87. The above-mentioned breaches of duty by Scott Alan Harms – Defendant Meier's agent and/or employee – constituted careless, negligent, and reckless conduct.

88. The above-mentioned breaches of duty by Scott Alan Harms – Defendant Meier's agent and/or employee – were a direct and proximate cause of Plaintiff Morris being run over as well as Plaintiff Morris's resulting injuries, losses, and damages.

89. As a direct and proximate result of Scott Alan Harms' – Defendant Meier's agent's and/or employee's – breaches of the aforementioned duties and the resulting running over of Plaintiff Morris, Plaintiff Morris has incurred past and future economic expenses, losses, and damages including, but not limited to, past and future medical expenses, past and future loss of earnings, loss of earning capacity, loss of time, and other economic damages related to injuries sustained in the accident as described above.

90. As a direct and proximate result of Scott Alan Harms' – Defendant Meier's agent's and/or employee's – breaches of the aforementioned duties and the resulting running over of Plaintiff Morris, Plaintiff Morris suffered in the past, and will continue to suffer in the future, non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional distress and impairment of quality of life.

91. As a direct and proximate result of Scott Alan Harms' – Defendant Meier's agent's and/or employee's – breaches of the aforementioned duties and the resulting running over of Plaintiff Morris, Plaintiff Morris suffered permanent physical impairment.

92. As a direct and proximate result of Scott Alan Harms' – Defendant Meier's agent's and/or employee's – breaches of the aforementioned duties and the resulting running over of Plaintiff Morris, Plaintiff Morris suffered permanent physical disfigurement.

93. Upon information and belief, on or about the aforementioned date, time, and place, Scott Alan Harms was an agent and/or employee of Defendant Meier.

94. Upon information and belief, on or about the aforementioned date, time, and place, Scott Alan Harms was acting in the course and scope of his agency and/or employment with, and with the authority of, Defendant Meier.

95. Defendant Meier is responsible and vicariously liable for the careless, reckless, and negligent acts and omissions of Scott Alan Harms – Defendant Meier's agent and/or employee – under the theory of *respondeat superior*.

96. The careless, reckless, and negligent acts and/or omissions of Scott Alan Harms – Defendant Meier's agent and/or employee on or about the aforementioned date, time, and place – are by law deemed the acts and/or omissions of Defendant Meier.

97. Plaintiff Zachary Morris was not comparatively negligent in causing himself to be run over by the push tractor operated by Scott Alan Harms or in causing his injuries, damages, and losses sustained on or about the aforementioned date, time, and place.

**WHEREFORE**, Plaintiff Zachary Morris respectfully requests that this Court enter judgment in his favor and against each of the Defendants, and grant:

(a) Appropriate relief at law and equity; and

(b) Economic losses on all claims allowed by law; and

(c) Compensatory and consequential damages, including, but not limited to, damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial; and

(d) Attorney's fees and any costs associated with this action, including expert witness fees, on all claims allowed by law; and

(e) Pre-judgment and post-judgment interest at the lawful rate; and

(f) Any further relief that this Court deems just and proper, and any other relief as allowed by law.

## JURY DEMAND

Plaintiff requests a trial to a jury on all issues so triable.

Dated this 30th day of June, 2017.

Respectfully submitted,

*/S/ Darin L. Schanker*
Darin L. Schanker, Esq., Colo. Atty. Reg. 23381
Claire F. Soto, Esq., Colo. Atty. Reg. 41492
BACHUS & SCHANKER, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Telephone: 303.893.9800
Facsimile:  303.893.9900
Email:  dschanker@coloradolaw.net
            claire.soto@coloradolaw.net

Plaintiff's Address:
411 N. Washington Ave.
Fleming, Colorado, 80728